UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO. 10-cv-037-KKC

JAMES MYNHIER                                                                                          PLAINTIFF

v.                          **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                         DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on cross Motions for Summary Judgment filed by Plaintiff James Mynhier ("Mynhier") and the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). Rec. 9, 12. For the reasons set forth below, the Court finds that the Commissioner's decision denying Mynhier's claim for benefits is supported by substantial evidence and will grant the Commissioner's motion for summary judgment.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Mynhier alleges that he became totally disabled on April 5, 2007 due to neck pain, back pain, diabetes, sleep apnea, abdominal pain and high blood pressure. AR 103, 131. Before the alleged disability onset date, Mynhier had obtained a high school education and completed two years of college courses. AR 137. In addition, he had prior relevant work experience as a youth service supervisor and as a disc jockey for a radio station. AR 132.

On April 6, 2007, Mynhier protectively filed an application for a period of disability and disability insurance benefits ("DIB"). AR 46. The claim was denied initially and on reconsideration. *Id*. Mynhier then requested a hearing which was held before Administrative Law Judge ("ALJ") Don C. Paris on March 26, 2009. AR 1-36, 46. On April 28, 2009, the ALJ

issued a decision denying Mynhier's claim for benefits. AR 46-56. Mynhier then filed a request for review with the Social Security Administration's Appeals Council, which denied the request for review, thereby rendering the ALJ's decision the final decision for the Commissioner. AR 37-40. Because Mynhier has properly exhausted all administrative remedies and timely filed this action, this Court now has jurisdiction under 42 U.S.C. § 405(g).

## II.   DISCUSSION

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).

This Court must defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The Court may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as his own

opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. App'x 503, 506 (6th Cir. 2005).

**B. Overview of the Process**

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving the existence and severity of limitations caused by his impairment and that he is precluded from performing his past relevant work for the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, the burden shifts to the Commissioner for the fifth step. *Id.*

At the first step, the claimant must show that he is not currently engaging in substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b). At the second step, the claimant must show that he suffers from a severe impairment or a combination of impairments that are severe. *See* 20 C.F.R. § 404.1520(c). At the third step, a claimant must establish that his impairment or combination of impairments meets or medically equals a listed impairment. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). The RFC analyzes an individual's ability to do physical and mental work activities on a sustained basis despite any existing mental or physical impairments. In determining the RFC, the ALJ must consider all of the claimants'

impairments, including those which are not severe. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Once the ALJ has determined the RFC, he must determine whether the claimant has the RFC to perform the requirements of his past relevant work. *See* 20 C.F.R. § 404.1520(f).

At the fifth step, the burden shifts to the Commissioner to establish that there is sufficient work in the national economy that the claimant can perform given his RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560(c).

## C. The ALJ's Decision

At step one of the sequential evaluation process, the ALJ determined that Mynhier has not engaged in substantial gainful activity since April 5, 2007, the alleged disability onset date. AR 48. At step two, the ALJ determined that Mynhier suffers from the following severe impairments: (1) morbid obesity; (2) obstructive sleep apnea; and (3) degenerative disc disease of the cervical spine with chronic pain. However, because Mynhier:

> worked with diabetes mellitus, gastro-esophageal reflux disease [GERD], status post arthroplasty of the right great toe joint; hypertension; hyperlipidemia; status post carpal tunnel syndrome release bilateral, and epigastric abdominal pain

and the record did not reveal that these impairments significantly limited his daily activities, the ALJ determined that they did not qualify as severe impairments. AR 49.

The ALJ found that Mynhier's diabetes was under fair control with medication. *Id*. Likewise, Mynhier's GERD was being controlled with Prilosec and Omeprazole. *Id*. With regard to the arthroplasty of Mynhier's right great toe, the medical evidence in the record indicates that it was resolved and resulted in a significant improvement in range of motion according to Dr. Clayton who treated him for the condition. *Id*. Based on the ALJ's review of

4

the medical evidence in the record, Mynhier's hypertension and hyperlipidemia were controlled with medication. *Id.* While Mynhier has complained of abdominal pain, an abdominal ultrasound was normal. *Id.* at 49-50. Finally, the medical evidence indicated that Mynhier had bilateral carpal tunnel release surgery in 1989 and 1990. *Id.* at 50.

At step three, the ALJ found that Mynhier does not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.* at 51. Prior to step four, based on his review of the medical evidence in the record, the ALJ determined that Mynhier has the residual functional capacity:

> to perform light work as defined in 20 CFR 404.1567(b)[1]...with occasional lift [sic] and carry [sic] 20 pounds, frequently 10 pounds; stand and walk sic [sic] hours in an eight-hour day, sit six hours in an eight hour day, only occasional climbing stairs, and remaps [sic], and never ladders, ropes and scaffolds; only occasional balancing, stooping, kneeling or crouching; never crawling, no more than frequent reaching [in] all directions including overhead, he should avoid concentrated exposure to full body vibration and because of body habitus he should avoid hazards such as unprotected heights and dangerous machinery.

*Id.* In making this determination, the ALJ considered Mynhier's hearing testimony and determined that his statements about the intensity, persistence and limiting effects of his symptoms were not credible. *Id.* at 53. In particular, the ALJ found that Mynhier's daily activities were inconsistent with his complaints of disabling pain. *Id.* at 52-53. In addition, the ALJ noted that the objective medical evidence did not support such complaints. *Id.* at 53. Finally, the ALJ considered the opinion of Mynhier's treating physician, Dr. Rachel Short ("Dr. Short"). While the ALJ recognized that Dr. Short saw Mynhier every three months, he found

---

[1] Under 20 C.F.R. § 404.1567(b), "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

that her RFC was contradicted by her own treatment notes, Mynhier's activities of daily living, and the other objective medical evidence in the record. *Id*. As a result, the ALJ gave Dr. Short's opinion no weight and gave greater weight to the opinions of the state agency non-examining physicians and psychologists. *Id*.

At step four, based on testimony by a vocational expert ("VE"), the ALJ determined that Mynhier had the RFC to perform the requirements of his past relevant work as a youth service worker and radio disc jockey. *Id*. at 54. Alternatively, at step five, the ALJ determined that considering Mynhier's age, education, work experience and RFC, there are other jobs that exist in significant numbers in the national economy that he can perform. *Id*. Based on these findings, the ALJ determined that Mynhier has not been under a disability as defined in the Social Security Act from April 5, 2007 through the date of the hearing decision. *Id*. at 55.

**D. Analysis**

Mynhier raises several arguments in support of his claim that the Commissioner's decision denying benefits is not supported by substantial evidence. The Court will address each of these arguments in turn.

**1. The ALJ properly considered the combined effects of Mynhier's impairments.**

In reaching a disability determination, the ALJ must consider the combined effect of all of the claimant's impairments, without regard to whether any of the impairments, considered individually, would be sufficient to render the claimant disabled. *Walker v. Comm'r of Soc. Sec.*, 980 F.2d 1066, 1071 (6th Cir. 1992); *see also* 20 C.F.R. § 404.1523 ("[W]e will consider the combined effects of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). In this case, Mynhier makes a

conclusory allegation that the ALJ did not take into account all of his impairments in determining that he is not disabled. However, the Court finds that this allegation is not supported by a review of the ALJ's hearing decision.

The ALJ's hearing decision indicates that he found that Mynhier did "not have an impairment or *combination of impairments* that meets or medically equals one of the listed impairments." AR at 51 (emphasis added). The ALJ also considered all of Mynhier's impairments individually and discussed the various conditions that were not found to be severe or not severe. Mynhier has failed to allege that what specific impairments the ALJ failed to consider and how these impairments may have affected his ability to perform work-related activities on a full-time basis. Based upon the Court's review of the ALJ's hearing decision and without the benefit of more specific arguments advanced by Mynhier, the Court finds that the ALJ properly considered the combined effect of Mynhier's impairments. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).

**2. The ALJ did not err in rejecting the opinion of Mynhier's treating physician and gave "good reasons" for doing so.**

Mynhier next claims that the ALJ erred by failing to give deference to the opinions of his treating physician, Dr. Short. Dr. Short opined that Mynhier was incapable of working "low stress" jobs, could only sit for four hours, and stand/walk for two hours. (AR. 365, 367). However, in reviewing the ALJ's hearing decision and the medical evidence in the record, the Court finds that the ALJ did not err by rejecting Dr. Short's opinion and gave sufficient reasons for doing so.

The treating physician rule requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because:

these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting 20 C.F.R. § 404.1527(d)(2)). However, the ALJ is only required to give the opinion of a treating physician controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)). A Social Security Ruling explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *5, 1996 WL 374188, at *2 (July 2, 1996).

Even if the ALJ does not afford a treating physician's opinion controlling weight, he must still determine how much weight is appropriate by considering a number of relevant factors including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *See also* 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, is the rule that the ALJ should "always give good reasons in [the] notice of determination or decision for the weight" given to the treating source's opinion. 20 C.F.R. § 404.1527(d)(2). The reasons given must be "supported by

8

the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at * 12, 1996 WL 374188, at * 5.

In this case, the ALJ recognized that he was required to consider Dr. Short's opinion because she was Mynhier's treating physician. However, he rejected her opinion for several reasons. First, he noted that the severe restrictions that she imposed on Mynhier's ability to work were inconsistent with her own treatment notes. During several examinations in 2008 and 2009, Dr. Short reported that Mynhier was alert and not in any acute distress. AR 352-53.

The ALJ also noted throughout the hearing decision that Mynhier's daily activities were inconsistent with his subjective complaints of disabling pain and with Dr. Short's opinion. While Mynhier testified that he did not get out of bed until after noon because of his condition, his former wife stated that he woke up around 6:45 in the morning. AR 27, 180. In addition, Mynhier acknowledged that he remained able to cook, help his father with chores on a regular basis, wash dishes, do the laundry and go shopping for groceries. AR 25-26, 146, 175, 318. Mynhier also stated that when his children stayed with them, he frequently took them to the movies, to the pool and a campground. AR 25-26. He admitted to walking for exercise with his elderly father and claimed to be able to take care of his own personal hygiene and keep the house clean. AR 25-28.

Prior to moving out of the marital home, Mynhier admitted that he helped with his children's daily activities including bathing and their school work. AR 175. He denied needing help with household chores, shopping, taking the trash out, washing his clothes, washing the

9

dishes, took his children to and from activities and was able to drive at least sixty to seventy miles at a time. AR 140, 146, 202, 316. These daily activities including others referred to in the ALJ's hearing decision and contained in the record contradict Dr. Short's opinion regarding Mynhier's condition and support the ALJ's decision to give her opinion no weight.

The medical evidence in the record is also inconsistent with Dr. Short's opinion. In 1996, Mynhier underwent a sleep study which determined that he had a "sleep efficiency of 84% and slightly reduced REM sleep but actually fairly good architecture." AR 429-30. While he was diagnosed with sleep apnea, he began using a CPAP machine which he acknowledged helped although he claimed that it did not "give [him] complete restful sleep through the night." AR 8. Mynhier also complains of pain stemming from having his C5-6 disks fused in March of 2005. AR 105. However, he was able to ambulate well after the surgery and there is no indication that the procedure caused him any complications. AR 205, 210. During a mental consultative exam, Mynhier admitted that he back felt better following the surgery although he claimed to still have some pain. AR 315. During this examination, he also related that he was upset because his wife wanted him to work until he was dead and was pressuring to return to work. AR 316-17.

Mynhier also made several complaints of nausea and abdominal pains. AR 128, 281. However, on examination, doctors found him to have only mild tenderness and indicated that he was "alert, not in acute distress, nontoxic looking." AR 278, 281. When Mynhier was asked about his level of pain in February of 2007, he related that the pain was constant but mild. AR 219. Treatment records related to Mynhier's diabetes are also unrevealing. Mynhier's physician indicated that his diabetes was in "fair control." AR 219. In September 2007, Mynhier was noted to be "[f]eeling well" with a normal gait and station and was not found to be in "acute

distress." AR 342.

Based on the medical evidence in the record contradicting Dr. Short's opinion, including her own treatment notes and Mynhier's testimony about his daily activities, the ALJ's decision rejecting Dr. Short's opinion was proper because the opinion was not supported by substantial evidence. Furthermore, the ALJ's hearing decision sets forth sufficient reasons for his rejection of Dr. Short's opinion.

**3. The ALJ did not fail to consider the durational requirement of substantial gainful activity.**

Mynhier also asserts that the ALJ failed to consider the durational requirement of substantial gainful activity. Mynhier argues that substantial gainful activity means more than merely finding a job and physically performing it. He asserts that the ALJ failed to consider whether he could perform substantial gainful activity on a long term basis. The Court finds that this argument is without merit.

Social Security Regulations provide that "[w]e will generally consider work that [the claimant] is forced to stop after a short time because of [his] impairment as an unsuccessful work attempt and [his] earnings from that work will not show that [he is] able to do substantial gainful activity." 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). Similarly, Social Security Ruling ("SSR") 96-8p defines an RFC as "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting *on a regular and continuing basis*, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8p, 1996 SSR LEXIS 5 at *5 (July 2, 1996) (emphasis added). Thus, implicit in an ALJ's RFC finding was the ALJ's determination that Mynhier could perform light work on a "regular and continuing" basis and not merely for a short period of time.

Mynhier relies on the Ninth Circuit's decision in *Gatliff v. Commissioner of Social Security*, 172 F.3d 690 (9th Cir. 1999) in support of his contention that the ALJ erred by failing to make a specific finding that he could perform substantial gainful activity on an ongoing basis. However, upon reviewing *Gatliff*, the Court finds that it does not stand for the proposition that an ALJ's RFC finding must include a specific reference that a claimant to perform substantial gainful activity on an ongoing basis. In *Gatliff*, there was no dispute that the VE testified that based on the claimant's RFC, he could only hold a job for two months before his mental impairments would force him to find a new job. *Id*. at 691. Accordingly, the Ninth Circuit held that:

> [w]here it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity. The practical effect of upholding the Commissioner's view in this case demonstrates the point: assuming that Gatliff, who is now under 40, could work for another 25 years, he would have to perform 150 jobs, at a rate of six jobs per year, to remain employed. Such a result strains both common sense and the practical realities of the labor market. Although we do not purport to define exactly how long a period of employment must last to be considered significant, a job of two-months' duration is certainly insufficient. The concept of substantial gainful activity requires more and consequently we hold that Gatliff was not capable of substantial gainful activity.

*Id*. at 694 (internal quotations omitted). In this case, nothing in the ALJ's RFC finding or the VE's testimony indicates that Mynhier would only be able to perform short periods of work before his impairments required him to seek a new position. As a result, *Gatliff* is clearly distinguishable from this case. Because the ALJ's RFC finding properly accounted for the durational requirement of substantial gainful activity, Mynhier's argument is without merit.

**4. The ALJ properly considered Mynhier's exertional and non-exertional restrictions.**

Mynhier also claims that the ALJ did not consider his numerous exertional and non-

exertional restrictions in making the RFC determination. Mynhier does not specify what exertional or non-exertional impairments or restrictions the ALJ failed to consider. This Court's review is limited to issues that Mynhier has specifically challenged and the Court is not obligated to search the record to develop and support Mynhier's arguments. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 447, 491 (6th Cir. 2006); *Belcher v. Astrue*, No. 09-129-KKC, 2010 U.S. Dist. LEXIS 40309, at *8-9 (E.D. Ky. April 23, 2010); *Griffie v. Astrue*, No. 09-12-ART, 2009 U.S. Dist. LEXIS 104527, at *7-8 (E.D. Ky. Nov. 2, 2009). Accordingly, the Court finds this argument to be without merit and holds that the ALJ properly considered Mynhier's exertional and non-exertional impairments.

## III. CONCLUSION

For the reasons set forth above, the Court holds that the Commissioner's decision denying Mynhier's claim for benefits is supported by substantial evidence in the record. Accordingly, it is **HEREBY ORDERED** as follows:

(1) Mynhier's Motion for Summary Judgment (Rec. 9) is **DENIED;**

(2) The Commissioner's Motion for Summary Judgment (Rec. 12) is **GRANTED;** and

(3) A judgment shall enter concurrently with this Memorandum Opinion and Order.

This the 16th day of August, 2010.



**Signed By:**
*Karen K. Caldwell*
**United States District Judge**